

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NORTHERN DISTRICT OF TEXAS
FILED

MAY 1 5 2015

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| WILLIAM STEVEN MCGREW, SR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-679-B-BN |
| | § | |
| CITY OF WICHITA FALLS, ET AL. | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge
for screening pursuant to 28 U.S.C. § 636(b) and a standing order of the District Court.
The undersigned now enters the following findings of fact, conclusions of law, and
recommendation.

**Background**

Procedural Background

In mid-February 2014, Plaintiff William Steven McGrew, Sr., a Texas inmate
proceeding *pro se*, filed this civil rights action against several governmental entities,
employees, and officers. *See* Dkt. No. 3. Plaintiff's action was first dismissed without
prejudice as barred by the three strikes provision of 28 U.S.C. § 1915(g). *See* Dkt. Nos.
6, 11, and 12.

On July 28, 2014, Plaintiff notified the Court that he intended to pay the
statutory filing fee, *see* Dkt. No. 14, which the Court construed as a motion to reopen

-1-

the case and vacate the order and judgment of dismissal, *see* Dkt. No. 16. On September 23, 2014, after the United States Court of Appeals for the Fifth Circuit remanded the case to this Court pursuant to Federal Rule of Appellate Procedure 12.1, *see* Dkt. No. 17, the Court's judgment dismissing this case was vacated, and Plaintiff's motion to reopen was granted, *see* Dkt. No. 18.

While Plaintiff made efforts to serve the then-operative complaint, *see* Dkt. Nos. 19, 23, 24, 26, 30, and 32, resulting in the filing of a motion to dismiss by Defendant W. Bernard Fudge, a state district judge, *see* Dkt. Nos. 20 and 21, Plaintiff also filed a procedurally improper motion for leave to file an amended complaint, *see* Dkt. No. 22 (Plaintiff's "amendment to" the complaint did not comply with Northern District of Texas Local Civil Rule 15.1, under which a party filing on paper "must attach a copy of the proposed amended pleading as an exhibit to the motion").

On December 15, 2014, the Court ordered Plaintiff to file, no later than January 16, 2015, a new motion for leave to amend his complaint and to attach to same a complete copy of the proposed amended complaint. The Court further instructed Plaintiff that it would then screen either the amended complaint, if properly filed, or the then-operative complaint pursuant to 28 U.S.C. § 1915A. *See generally* Dkt. No. 33. Plaintiff again sought leave to amend the complaint on January 6, 2015, *see* Dkt. No. 35, and, on January 8, 2015, the Court granted his motion, *see* Dkt. No. 36, and the Clerk docketed his amended complaint [Dkt. No. 37].

Upon reviewing the amended complaint, the undersigned determined that

Plaintiff need respond to interrogatories to further the screening process. The magistrate judge's questionnaire [Dkt. No. 39] was issued February 4, 2015. And Plaintiff's verified responses [Dkt. No. 40] were docketed March 5, 2015.

Claims Presented and Factual Background (operative, amended complaint)

Very broadly, under 42 U.S.C. §§ 1983 and 1985, Plaintiff asserts "claims against Wichita Falls City and Wichita County Officials acting in [their] individual capacities and officially for acting in league and concert with each other and parties both known and unknown to violate the U.S. Constitution and [his] civil rights ...." Dkt. No. 37 at 5. He asserts that he was "illegally arrested and placed in the Wichita County Jail as a result [of] an unconstitutional city code[,] only enforced on the Eastside, which is predominantly black[,]" resulting in "racial profiling and discrimination based on race." *Id.* at 5-6.

> Plaintiff asserts that the named defendants'
>
> acts or omissions violated [his] rights to due process of law in depriving him of his property and rights to effective assistance of counsel and to a fair and impartial proceedings in both the deprivation of his property and his right to effective assistance of counsel. [Further, Defendants] conspired to retaliate against [him] for seeking redress of grievances[] and assisting others in this endeavor, in violation of the First Amendment... [Plaintiff further claims e]xcessive use of force ... [and r]acial profiling and false inclusion on the so called "Gang List."

Dkt. No. 40 at 1.

Plaintiff claims he has been a longtime community activist on "the black 'Eastside' of Wichita Falls[,]" assisting others to seek "justice against the corrupt system in the city of Wichita Falls and the illegal profiling of black citizens" through

-3-

the filing of "lawsuits against the city and county .... Because of this[ activism, Plaintiff

asserts, he] has been targeted for retaliation by the Wichita Falls Police and Wichita

County Sheriff. [And o]ther city and county officials have participated in this

retaliation." *Id.* at 2. Plaintiff continues,

> I was illegally profiled for merely walking across the city and arrested for
> a bogus trespassing charge, and this happened three times and my parole
> was revoked as a result of these trumped up charges. This pattern dates
> back to 1993 when Plaintiff was arrested for a false charge of aggravated
> robbery. This is when the community activism began. False city code
> violations were instituted against Plaintiff as well. The City of Wichita
> Falls Gang Injunction was used to oppress people of color as well. Once
> [one's] name was placed on gang list, maybe because your family member
> is on list for just associating with another person on list, you are then
> illegally profiled. Plaintiff was targeted by Gang Task Force even though
> he was not listed as a member of any gang. A witness for Plaintiff was
> attacked and killed before could testify by the Wichita Falls Police, shot
> in cold blood when he had no weapon. The dirty cop code was followed
> and this was covered up....

*Id.*

Plaintiff's claims as against the ostensibly jural entities named in the complaint

are further set out below:

<u>City of Wichita Falls</u>

In a conclusory manner, Plaintiff claims that the City of Wichita Falls used

"[u]nconstitutional tactics and policies that target minorities/deny [them] due process."

Dkt. No. 37 at 3. Asked by the Court to expand completely on this claim, Plaintiff

states that an unnamed police officer arrested him on June 4, 2011, which began a

conspiracy "on August of 2011, but the policy was in place long before this date." Dkt.

No. 40 at 8. Plaintiff claims that the City, through its "Gang Task Force and Drug Task

Force," racially profiled him and falsely labeled him as a drug dealer and gang member "because he was black and an activist for blacks and the Eastside community ...." *Id.*

Attorney Ronnie Molina

Plaintiff alleges that Defendant Ronnie Molina, his former criminal defense counsel, participated in a conspiracy with others to "knowingly and willfully den[y him] effective assistance of counsel ...." *Id.* at 3; *see id.* at 4 ("Plaintiff attempted to fire Molina to no avail. Plaintiff was forced to accept a nut fir an attorney.... This was not an isolated incident.... It was a custom to have Molina come in and fail to represent clients that had false charges pending and did not want to go along with the program and plead guilty. It was done deliberately to deprive [a] class of people the guiding hand of counsel to prove their innocence."); *accord* Dkt. No. 37 at 23-24.

Judge Fudge

Plaintiff, in a conclusory manner, alleges that State District Judge W. Bernard Fudge participated in a conspiracy to deprive Plaintiff of effective assistance of counsel, abused his power, coerced Plaintiff to plead guilty, and worked with prosecutors to revoke Plaintiff's bond. *See* Dkt. No. 37 at 3, 11, 14, & 19; *see also* Dkt. No. 40 at 3-4.

Wichita County Tax Assessor/Collector

Plaintiff alleges that a mix-up on by the Wichita County Tax Assessor resulted in the wrongful taking of his home on or about November 24, 2011. *See* Dkt. No. 37 at 13. He further alleges that this defendant participated in a conspiracy in November 2011 to embezzle $3,600.00 from Plaintiff for taxes he did not owe. *See id.* at 22; Dkt.

No. 40 at 5 ("The Wichita County Tax Assessor/Collector forced Plaintiff to pay taxes that he did not owe and over-pay taxes ... in conjunction with other Defendants ... to deprive Plaintiff of property without due process. It was all a concerted effort to punish and deprive Plaintiff for being a community activist."); *see also* Dkt. No. 40 at 13 (alleging that in November 2011 this defendant ignored his status as a disabled veteran to over assess his taxes).

Assistant District Attorneys Kosub and Lane

Plaintiff alleges that these state prosecutors participated in a conspiracy to deny him effective assistance of counsel and deprive him of due process. *See* Dkt. No. 37 at 3-4; *see also* Dkt. No. 40 at 4 ("Molina and the District Attorney Assistants, Ed Lane and Dobie Kosub, along with the bondsman, Green, and the [ ] Judge conspired to revoke Plaintiff[']s bond for spurious reasons that could not be proven and had no basis in fact. This deprived Plaintiff of the property involved in posting bail without due process of law."); *id.* (further alleging that these defendants conspired to deprive Plaintiff of a competency hearing).

Leon Morris

Leon Morris is alleged to be a forensic psychologist who falsified court records and denied Plaintiff due process by never conducting a competency evaluation of him. *See* Dkt. No. 37 at 4; Dkt. No. 40 at 21 (further alleging that Morris took these actions "as part of the racial profiling that occurs in Wichita County, as this was done to numerous poor black people"); *see also* Dkt. No. 40 at 4 (alleging that Morris

participated in a conspiracy to deny Plaintiff effective assistance of counsel and deprive him of due process).

<u>Brenda Green</u>

Plaintiff alleges that on or around November 22-25, 2011, Brenda Green, associated with a bail bonds company, embezzled $9,000 from him, an amount comprised of $5,000 in bail funds "and another $4,000 for back taxes." *See* Dkt. No. 37 at 4, 10, 19; Dkt. No. 40 at 19.

<u>R.H. "Bobby" Hampton</u>

Bobby Hampton is alleged to be the "Bail Bond Board Chairman" and alleged to have denied Plaintiff "due process in the return of bail money illegally taken by Green Bail Bonds" in November 2011. Dkt. No. 37; Dkt. No. 40 at 19; *see also* Dkt. No. 37 at 22 (alleging Hampton "wa[s] in control of all bail bond companies' actions in Wichita County.... I file[d] a legitimate complaint against Green Bail Bond company for the return of money that was wrongly confiscated by Green Bail Bonds with Mr. Hampton[, but he] did not investigate my complaint, no[r] did he forward it to the Bail Bond Board in Austin.... He was working in league and concert with other defendants and parties ... to violate my rights as a U.S. Citizen."); *accord* Dkt. No. 40 at 20.

<u>Sheriff David Duke</u>

Plaintiff alleges that Wichita County Sheriff David Duke denied him due process, profiled him for racially-motivated reasons, filed false charges and accusations against him, and placed on him illegal and unconstitutional liens. *See* Dkt. No. 37 at 4; *see also* Dkt. No. 40 at 6 ("David Duke and the County Tax Assessor attempted to

confiscate Plaintiff's property at 1225 Tulip St. for taxes that were not owed or due.").

Wichita Drug Task Force Supervisor/Leader

Plaintiff alleges that this John Doe defendant "filed and prosecuted false charges of drug conspiracies" against him, "denied [him] due process[,]" and committed "racial discrimination." Dkt. No. 37 at 4. These claims appear related to a July 7, 2010 raid by the drug task force at 414 Humphrey Street, the home of Plaintiff's son. *See id.* at 15, 23; Dkt. No. 40 at 10.

> On [that date], Plaintiff was [at the home,] and the task force came in. They mistakenly believed that Ray Fisher was Plaintiff's son. It was him and Plaintiff alone that day, and they both complied with the officer's masked demands and orders. One officer put a flash bang grenade between the legs of Fisher and it exploded. This casued grave and serious injury. He spent over three weeks in the hospital. The grenade hurt Plaintiff[ 's] ear and also caused him physical pain and suffering mentally....

Dkt. No. 40 at 10; *see also* Dkt. No. 237 at 23 ("Drug task force administrator/supervisor violated my civil rights ... acting under color of state law in these illegal raids and acts of excessive force with provocation because we are people of color/black.").

After thoroughly reviewing the amended, now operative, complaint as further amended by Plaintiff's responses to the Court's interrogatories, the undersigned concludes that Plaintiff's case should be summarily dismissed under 28 U.S.C. § 1915A.

## Legal Standards

A district court is required to screen a civil action brought by a prisoner –

whether he or she is incarcerated or, instead, detained prior to trial – seeking relief from a governmental entity or employee. *See* 28 U.S.C. § 1915A(a), (c).

Merely because Plaintiff has paid the statutory filing fee does not mean that this action – by an inmate primarily against governmental entities, officers, and employees as well as other individuals Plaintiff asserts have acted under color of state law to violate his civil rights – should not be screened. *See, e.g., Thompson v. Hayes*, 542 F. App'x 420, 420-21 (5th Cir. 2013) (per curiam) ("[U]nder 28 U.S.C. § 1915A(b)(1), the district court is required to review any civil complaints in which a prisoner seeks relief against a government entity, officer, or employee regardless of whether the prisoner has paid the filing fee." (citing *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998)); *Harris v. Jackson*, No. 12 C 0835, 2012 WL 787222, at *1 (N.D. Ill. Mar. 8, 2012) (conducting Section 1915A initial review of claims by a state prisoner against a private security guard the court found acted under color of state law "[f]or purposes of initial review").

On initial screening, the Court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, that:

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

*Id.* § 1915A(b).

An action is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Brewster v. Dretke*, 587 F.3d 764,

767 (5th Cir. 2009) ("A claim may be dismissed as frivolous if it does not have an arguable basis in fact or law."). A complaint is without an arguable basis in law if it is grounded upon an untenable, discredited, or indisputably meritless legal theory, including alleged violations of a legal interest that clearly does not exist. *See Neitzke*, 490 U.S. at 326-27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

The court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and

conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss[,]" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

Although a court generally cannot look beyond the pleadings in determining whether claims should be dismissed, the pleadings here include Plaintiff's responses to the Court's interrogatories, *see* Dkt. No. 40, which "become part of a plaintiff's pleadings," *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)).

## Analysis

Non-jural Entities: Wichita Falls Police Department, Wichita County Sheriff Department, and Wichita Gang Task Force

Plaintiff has named as defendants several law enforcement agencies – Wichita Falls Police Department, Wichita County Sheriff Department, and Wichita Gang Task Force. These defendants are non-jural; that is, they do not have the capacity to be sued. As such, all claims against them should be summarily dismissed.

> A plaintiff may not bring a claim against a governmental agency or department unless it enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). State agencies that may sue and be sued are known as jural entities; non-jural entities are not subject to suit. *Id.* The capacity to sue or be sued is determined by the law of the state where the district court is located. FED. R. CIV. P. 17(b)(2), (3); *Darby*, 939 F.2d at 313-14.
>
> In Texas, county sheriff's departments and police departments are not legal entities capable of being sued in the absence of express action by the superior corporation (the county, in the case of a sheriff's department, and the city, in the case of a police department) "to grant the servient agency with jural authority." *Darby*, 939 F.2d at 313. Accordingly, in *Darby*, the Fifth Circuit affirmed a district court's dismissal of claims that were brought against a police department rather than the city after concluding that the police department had no capacity to sue or be sued. 939 F.2d at 313.

*Reynolds v. City of Poteet*, No. SA:12–CV–01112–DAE, 2013 WL 594731, at *10 (W.D. Tex. Feb. 15, 2013) (some citations omitted); *see also Plemons v. Amos*, No. 2:03-CV-421-J, 2006 WL 1710415, at *7 (N.D. Tex. June 22, 2006) ("[T]he general rule [is] that law enforcement agencies are not separate governmental entities that can be sued." (collecting cases)).

Similarly, "Wichita Gang Task Force" – to the extent such an entity exists, *see* Dkt. No. 26 (response to Plaintiff's attempt to obtain waiver of service for entity stating, "[t]here is no such department within Wichita County") – also is a non-jural entity. *See Dillon v. Jefferson Cnty. Sheriff's Dep't*, 973 F. Supp. 626, 627 (E.D. Tex. 1997); *Plemons*, 2006 WL 1710415, at *6-*8; *see also Welch v. Jefferson Cnty. Court*, No. 1:12–CV–330, 2015 WL 66495, at *4 (E.D. Tex. Jan. 5, 2015) ("Federal Courts have consistently dismissed § 1983 against non-legal entities." (citations omitted)).

State of Limitations: All Defendants

Plaintiff has informed the Court that he became aware of his claims against all defendants from as early as June 4, 2011 to as late as "January of 2012, exact dates unknown as my legal material was lost by U.S. Marshal Service[] and the Federal Bureau of Prisons." Dkt. No. 40 at 6. Because this lawsuit – solely asserting claims under Sections 1983 and 1985 – was filed no sooner than February 17, 2014, *see* Dkt. No. 3 at 20, all claims Plaintiff asserts are barred by limitations and should be summarily dismissed.

Section 1983 and 1985 claims are governed by Texas's two-year, personal-injury limitations statute. *See Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987) ("Civil rights actions brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1988 are deemed analogous to Texas tort actions, and therefore, the applicable limitations period is the two years fixed by Article 5526 of the Vernon's Texas Annotated Statutes, now recodified as Tex. Civ. Prac. & Remedies Code Ann. § 16.003 (Vernon 1986)." (citations omitted)); *accord Villegas v. Galloway*, 458 F. App'x 334, 338 (5th Cir. 2012) (per curiam); *see also Wooley v. City of Grapevine, Tex.*, No. 4:12–CV–299–Y, 2012 WL 6727619, at *2 (N.D. Tex. Dec. 28, 2012) ("The Supreme Court has held that all § 1983 actions are governed by the statute of limitations for personal-injury actions for the state of suit. In Texas, the applicable limitations period is two years. Wooley has also asserted conspiracy claims under 42 U.S.C. § 1985, but claims under that statute are also subject to the two-year limitations provision." (footnotes omitted)).

Plaintiff's claims "accrued when he became aware that he suffered an injury or

had sufficient information to know that he has been injured." *Villegas*, 458 F. App'x at

338 (citing *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002)). According to Plaintiff –

in responding to the Court's interrogatory asking that, for each claim he asserts, he

"state the date(s) you became aware of the actions of the defendant(s)[,]" Dkt. No. 40

at 1 – he

> became aware that the attorney appointed him was a nut soon after he
> was appointed on 08/01/11. It was on or about November of 2011 that
> Plaintiff realized [that Judge Fudge] and A.D.A.s along with Molina in
> collusions [sic] with another and Molina was incompetent as an attorney
> and working to get Plaintiff's bond revoked without a hearing and
> falsifying statements that Plaintiff threatened him, as did Brenda Green.
> It was around this time that Leon Morris and the others attempted to
> have Plaintiff determined insane without a hearing and no evaluation.
> David Duke and the County Tax Assessor attempted to confiscate
> Plaintiff's property at 1225 Tulip St. For taxes that were not owed or due,
> It was on June 4, 2011, that Plaintiff became aware of the excessive use
> of force was illegal. It was around November of 2011 Plaintiff became
> aware that he had been falsely implicated in a federal conspiracy by Gang
> Task Force and Drug Task Force, which is still under appeal at this time
> in the Fifth Circuit. Bobby Hampton knew that there was a patten of
> abuse of the bond system in Wichita County and he condoned such as to
> Plaintiff in November or December of 2011. This teaming up of officials
> was the worse abuse of office in Wichita County in years.

Dkt. No. 40 at 6.

This action was therefore filed more than two years after the latest date on

which Plaintiff states he became aware of the actions of the defendants that caused his

alleged injuries.

Absolute Immunity: Judge Fudges and Assistant District Attorneys Kosub and Lane

Judges generally have absolute immunity for judicial actions taken within the

scope of their jurisdiction, which also means judicial officers are generally immune

from suits for money damages. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam); *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221-22 (5th Cir. 2009). "Judicial immunity can be overcome only by showing that the actions complained of were nonjudicial in nature or by showing that the actions were taken in the complete absence of all jurisdiction." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). "A judge's acts are judicial in nature if they are normally performed by a judge and the parties affected dealt with the judge in his judicial capacity." *Id.* at 285 (internal quotation marks omitted). But "judicial immunity is not overcome by allegations of bad faith or malice[,]" *Mireles*, 502 U.S. at 11, and "[d]isagreeing with a judge's actions does not justify depriving that judge of his or her immunity[,]" *Greenlee v. U.S. Dist. Court*, No. 09–2243–CV–FJG, 2009 WL 1424514, at *2 (D. Kan. May 21, 2009) (citing *Stump*, 435 U.S. at 363)).

Similarly, prosecutors acting within the scope of their duties as prosecutors are absolutely immune. *See Imbler v. Pachtman*, 424 U.S. 409, 420-24 (1976); *see also Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 634 n.2 (5th Cir. 2000) ("As to prosecutors, entitlement [to immunity] flows from performance of activities that are intimately associated with the judicial process, such as initiating and prosecuting a criminal case." (citing *Imbler*, 424 U.S. at 430)).

A plaintiff "may overcome a defendant's prosecutorial immunity by alleging actions that fall outside 'initiating the prosecution and in carrying the case through the judicial process.'" *DeLeon v. City of Dallas*, No. 3:02-cv-1097-K, 2003 WL 22244773, at

*1 (N.D. Tex. Sept. 16, 2003), *reversed in part on other grounds*, 141 F. App'x 258 (5th Cir. 2005) (quoting *Boyd*, 31 F.3d at 285).

> Prosecutorial immunity, however, applies even if the prosecutor is accused of knowingly using perjured testimony, withholding exculpatory evidence, and failing to make full disclosures of facts. State prosecutors are absolutely immune for their actions intimately associated with the judicial process, including their actions in seeking the issuance of an arrest warrant.

*Id.* (citations and quotation marks omitted); *see Bibb v. Montgomery Cnty. Sheriff*, Civil Action No. H-13-3736, 2014 WL 3828232, at *8 (S.D. Tex. July 30, 2014) ("[A] prosecutor is entitled to absolute immunity for his action in commencing a prosecution and all actions during the course and scope of the prosecution, even against charges that he acted 'maliciously, wantonly, or negligently.'" (quoting *Imbler*, 424 U.S. at 430-31)).

Plaintiff alleges neither that Judge Fudge nor either of the state prosecutors acted outside of their respective roles in the judicial process. As such, all three defendants are absolutely immune from all claims asserted against them in this action and those claims also should be dismissed for this reason.

### Recommendation

The Court should summarily dismiss this action under 28 U.S.C. § 1915A and deny as moot the pending motions to dismiss and disqualify [Dkt. Nos. 20 and 28].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May ___, 2015

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE